[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 23, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-14144
Non-Argument Calendar

_____

D. C. Docket No. 07-60088-CR-JIC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHAVIS YA'MON CREWS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(July 23, 2008)**

Before BIRCH, DUBINA and FAY, Circuit Judges.

PER CURIAM:

Chavis Ya'mon Crews appeals his 120-month sentence for possessing with intent to distribute 50 grams or more of crack cocaine, in violation of 21 U.S.C. § 841(a)(1). Crews argues that the district court clearly erred in denying safety-valve relief because he satisfied the criteria set out in U.S.S.G. § 5C1.2. For the reasons set forth below, we affirm.

## I.

Crews was arrested and charged after a police officer, responding to a complaint regarding a car driven by Crews and indicating that Crews seemed to be involved in a domestic dispute, searched Crews's person and car, and discovered three bags of marijuana and $3,701 in cash on Crews's person, and 133.9 grams of crack cocaine and $35,892 in cash, separated into $1,000 bundles, in Crews's car. Crews admitted ownership of the drugs and money, claiming that he had obtained the crack cocaine earlier in the day and that the money represented his life's savings.

In a later interview with authorities, Crews claimed that he saved the money by saving $50 a day from the $100 a day he earned working as a roofer. He had received a call the morning of his arrest to travel to a nearby town to obtain crack cocaine and simply put the money in question in his car before leaving. On his way home, he received a call from his girlfriend, which prompted him to travel to

2

the location of the ultimate disturbance and his arrest.[1]

At Crews's sentencing hearing, the government argued that Crews was not eligible for a two-level safety-valve reduction for providing the government with a truthful and complete account of his offense, pursuant to § 2D1.1(b)(9), because Crews's claim that the money found in his car represented his life's savings was not truthful. Specifically, the government took issue with Crews's decision to take $40,000 of his life savings with him to obtain a relatively small amount of crack cocaine. In response, Crews testified as follows.

He began saving the money when he was a teenager and was now 26 years old. The roofing company that he worked for paid him $100 in cash per day. Crews tried to save $50 a day, and, as soon as Crews reached $1,000, he wrapped those bills in a rubber band and set them aside. He kept the individual "stacks" in a plastic bag. Crews never declared this money as income. He intended the money for a "rainy day[]" and did not keep it in a bank account because he was afraid of the Internal Revenue Service. On the day of his arrest, he took the approximately $40,000 with him to purchase a relatively small amount of crack, which ultimately cost only $2,700, for "no particular reason, like [he] just had it on [him] at the

---

[1] A transcript of, or notes from, this interview was not in the record. Rather, the government proffered these statements at Crews's sentencing hearing, and Crews did not object to the facts recited by the government.

3

time. . . [and] brought it out [of] the house that morning." It "[m]aybe [was] a showboat issue." While the approximately $3,000 seized from his person was part of his "rainy day" stash, he had separated it from the rest and put it in his pocket that morning for "no particular reason" and to "add it up." The money that Crews used to purchase the crack cocaine never was a part of this stash. This money was earned from selling drugs.

On cross-examination, Crews testified that he had been selling crack cocaine for approximately three years, but only when "situations [got] rough." Generally, he purchased five ounces of crack cocaine, broke it down into individual pieces, and sold the pieces for a total income of $800. He had been working for his current roofing company for approximately three years. He worked between five and six days a week. Before that, he worked "little jobs" and at a dog track. When he took the money with him to purchase crack cocaine, he was not in danger of being robbed of the money because he did not intend to show anybody that he had it. On redirect, Crews testified that part of the stash, or approximately $15,000, probably was "drug related money."

The district court denied the safety-valve reduction. The court found that Crews's testimony lacked credibility and stated, "There's no doubt in my mind that that money came from drugs. I can't be any clearer than that." The district court

then noted that the statutory minimum term of imprisonment for Crews's offense was 10 years, pursuant to 21 U.S.C. § 841(b)(1)(A), and sentenced Crews accordingly.

## II.

When reviewing the district court's safety-valve decision, we review factual determinations for clear error and legal conclusions de novo. United States v. Milkintas, 470 F.3d 1339, 1343 (11th Cir. 2006). We have held that, in conducting our review, we "shall give due regard to the opportunity of the sentencing court to judge the credibility of the witnesses." United States v. Glinton, 154 F.3d 1245, 1258-59 (11th Cir.1998).

Pursuant to U.S.S.G. § 5C1.2(a), the district court "shall impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence" if it finds that the defendant satisfies the "safety-valve" criteria. Likewise, pursuant to § 2D1.1(b)(9), the district court should apply a two-level reduction to a defendant's base offense level if the defendant meets these criteria. These criteria require in part that,

> not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information

5

shall not preclude a determination by the court that the defendant has complied with this requirement.

U.S.S.G. § 5C1.2(a)(5).  The defendant bears the burden of proving his satisfaction of this criterion and ultimate eligibility for safety-valve relief.  Milkintas, 470 F.3d at 1345.[2]

### III.

The district court did not clearly err in denying safety-valve sentencing.  See Milkintas, 470 F.3d at 1343.  While Crews insisted that the money seized from his car represented his life's savings, he failed to provide a reason why he took the money with him to obtain crack cocaine. Although he initially stated that he took the money for the purposes of "showboat[ing]," he later stated that he did not intend to show it to anyone.  Likewise, although he initially insisted that the money was not derived from drug sales, he later stated that perhaps $15,000 of it was drug-related money.[3]  The inconsistencies of Crews stories, coupled with his too-

---

[2] Although the discussion at sentencing focused on the two-level reduction afforded under § 2D1.1(b)(9), we also have considered the relief from the statutory minimum afforded under § 5C1.2. Because the statutory minimum of 120 months' imprisonment exceeds the greatest term of Crews's guideline imprisonment range, or 87 and 108 months, the only benefit safety-valve sentencing could confer on Crews is that afforded by § 5C1.2.

[3] For the first time on appeal, Crews argues that the record made clear that he carried his life savings with him because he did not feel comfortable leaving the money at home with his girlfriend, with whom he was feuding.  Aside from the lateness of this claim, it is not supported by the record.  Crews told authorities that he decided to take the money with him in the morning and only later received a call from his girlfriend and became entangled in a dispute with her.

late admission that a portion of the rainy day stash derived from drug sales, provided ample reason for the district court's doubt. Given this, and the deference due the district court's finding on Crews's credibility, we affirm the district court's denial of safety-valve sentencing. See Glinton, 154 F.3d at 1258-59.[4]

**AFFIRMED.**

---

[4] On appeal, Crews briefly mentions that he is eligible for re-sentencing pursuant to Amendment 706 of November 2007, by which the Sentencing Commission approved a two-level reduction for crack-cocaine sentences, which was made retroactive in December 2007 as March 3, 2008. We decline to address this issue in the instant appeal because Crews may move for relief under Amendment 706 by way of a motion under 18 U.S.C. § 3582(c)(2).