[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-10551

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

MICHAEL SHAQUILLE LEE,
a.k.a. Smooth,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:21-cr-00048-TJC-PDB-11

_____

Before JORDAN, NEWSOM, and ANDERSON, Circuit Judges.

PER CURIAM:

The district court sentenced Michael Lee to 40 months of imprisonment for conspiracy to distribute and to possess with intent to distribute molly and flakka over an approximated six-month span. This term of imprisonment was a 47-month downward variance from the low-end of the advisory guideline range. Nonetheless, Mr. Lee asserts on appeal that he was entitled to safety-valve relief, that he was entitled to a minor role reduction for his part in the conspiracy, that his sentence is both procedurally and substantively unreasonable, and that it violated his constitutional right to be free from cruel and unusual punishment under the Eighth Amendment.

As explained below, we affirm. [1]

**I**

Mr. Lee was charged with conspiring to possess and distribute MDMA and alpha-PVP, in violation of 21 U.S.C. § 841(b)(1)(C) and § 846. These drugs are colloquially known as "molly" and "flakka," respectively. After Mr. Lee pled guilty without a written plea agreement, a probation officer prepared a presentence investigation report ("PSR") outlining the following offense conduct.

_____

[1] We assume the parties' familiarity with the facts and procedural history and set out only what is necessary to explain our decision.

## A

Between July of 2018 and April of 2021, Kimberly and Neal Walker led a drug-trafficking organization that distributed molly and flakka from three residences. The Walkers did not personally distribute the drugs but hired others, like Mr. Lee, to do so on the organization's behalf. The organization comprised of at least twelve members with varying roles; those members worked in regular shifts, selling drugs from the three residences twenty-four hours a day. The Walkers coordinated shifts at the residences, maintained the drug inventory, supplied the drugs, and paid their distributors.

According to the initial PSR, Mr. Lee worked approximately four shifts per week at one of the drug residences from September of 2020 through April of 2021, and approximately 4.9 kilograms of flakka and 358 grams of molly were attributed to him. The probation officer calculated a base offense level of 30 under U.S.S.G. § 2D1.1(a)(5) & (c)(5) based on a converted drug weight of 2,041 kilograms. The PSR recommended no enhancements and applied a three-level total reduction under § 3E1.1(a)–(b) for acceptance of responsibility and for timely notifying authorities of his intention to plead guilty. As a result, the PSR calculated a total offense level of 27.

The PSR also described Mr. Lee's criminal history, which involved various juvenile offenses and adult convictions for possession of 20 grams or less of cannabis and separately for possession of a controlled substance and drug paraphernalia. For these

offenses, the PSR calculated a criminal history subtotal of eight; however, because the instant offense was committed while Mr. Lee was on probation, an additional two points were added, for a total criminal history score of ten and a criminal history category of V. Mr. Lee's criminal history category of V and an offense level of 27 yielded a Sentencing Guidelines range of 120 to 150 months of imprisonment.

**B**

Mr. Lee raised several objections to the PSR, including objections to the scoring of his criminal history points for his juvenile offenses, the calculated drug weight attributed to him (which included a time period during which he was incarcerated), the denial of a minor role adjustment under § 3B1.2, the recommendation that a downward departure was unwarranted, and finally, to the "implicit conclusion" that the safety-valve criteria under § 3553(f) was inapplicable to his case.

After addressing those objections, the probation officer revised the PSR, adopting Mr. Lee's objections to calculations of the drug quantity and criminal history category but rejecting the objections regarding a minor role adjustment, downward departure, and the application of the safety-valve. The revised PSR attributed 4.084 kilograms of flakka and 294.4 grams of molly to Mr. Lee, lowering the converted drug weight to 1,685.44 kilograms. Because this weight still fell within the more-than-1,000-but-less-than-3,000-kilograms range, this revision did not affect Mr. Lee's base offense level of 27. The probation officer did, however, reduce the

criminal history points attributed to Mr. Lee's three juvenile offenses to zero points, reducing his total number of criminal history points to four and his criminal history category to III.

The revised criminal history category of III and an offense level of 27 lowered Mr. Lee's Sentencing Guidelines range to 87 to 108 months of imprisonment.

## C

At sentencing, the district court heard argument from Mr. Lee's counsel regarding the outstanding objections. Specifically, Mr. Lee still maintained that he was entitled to (1) a minor role reduction, (2) safety-valve relief, and (3) a downward departure or variance based on his personal history and characteristics. The district court ultimately denied Mr. Lee's requests for a minor role reduction and/or safety-valve relief, but granted a downward variance based on the 18 U.S.C. § 3553(a) factors and the mitigating evidence presented by Mr. Lee's counsel.

The district court sentenced Mr. Lee to 40 months' imprisonment and three years of supervised release. The court specifically rejected Mr. Lee's arguments regarding the propriety of a minor role reduction and the application of the safety-valve relief, noting that Mr. Lee's conduct was commensurate with that of an average participant in the drug scheme and that the statutory safety valve did not apply. To the extent Mr. Lee asserted that he was entitled to safety-valve relief under the relevant Sentencing Guidelines, the district court also noted that—at the time of Mr. Lee's sentence—the Sentencing Guidelines had not yet been amended to

reflect the new criteria in § 3553(f), and therefore, this circuit's decision in *United States v. Garcon*, 54 F.4th 1274 (11th Cir. 2022) (en banc), was not at issue.

## D

On appeal, Mr. Lee asserts that the district court erred by declining to apply safety-valve relief and by declining to apply a minor role reduction. He also asserts that the district court's sentence is both procedurally and substantively unreasonable, and violative of the Eight Amendment's prohibition against cruel and unusual punishment. We address each argument below.

## II

We start with Mr. Lee's argument regarding safety-valve relief. There are two "safety valve" provisions potentially at issue: a statutory safety valve provision under 18 U.S.C. § 3553(f) and a guidelines safety valve provision under U.S.S.G. §§ 5C1.2(a) and 2D1.1(b)(18). It is not clear under which provision Mr. Lee seeks relief, but both on appeal and before the district court, Mr. Lee cites only to the statutory safety valve under § 3553(f) and our en banc decision in *Garcon*, 54 F.4th at 1277 (analyzing § 3553(f)). Notably, as the district court correctly observed at sentencing, the criteria for relief under the guidelines safety valve provision, U.S.S.G. § 5C1.2(a), had not been amended at the time of sentencing to reflect the more expansive criteria contained in § 3553(f). *See* First Step Act of 2018, Pub. L. No. 115-391, § 402(a)(1)(A)(ii), 132 Stat. 5194, 5221 (amending § 3553(f)(1)). *See also United States v. Jerchower*, 631 F.3d 1181, 1184 (11th Cir. 2011) (a court applies the version of the

23-10551                Opinion of the Court                    7

Sentencing Guidelines in effect on the date of the sentencing hearing).[2]

Accordingly, we limit our discussion to the statutory safety valve as amended by the First Step Act, 18 U.S.C. § 3553(f).

When reviewing a district court's safety-valve decision, we review factual determinations for clear error and legal conclusions de novo. *United States v. Milkintas*, 470 F. 3d 1339, 1343 (11th Cir.

---

[2] As set forth above, at the time of Mr. Lee's sentencing, there was an incongruity between the safety-valve criteria under 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2(a). The Guidelines similarly list five criteria in § 5C1.2(a) and provide for a two-level reduction in the offense level for a drug offender if he or she satisfies that criteria. *See* U.S.S.G. §§ 2D1.1(b)(18), 5C1.2(a). Under the then-applicable § 5C1.2, which had not yet been amended, a defendant was eligible for safety-valve relief if, among other things, the defendant "d[id] not have more than 1 criminal history point." § 5C1.2(a). Mr. Lee was not eligible under that version of the Guidelines because he had more than one criminal history point. The United States Sentencing Commission has since enacted an amendment to make U.S.S.G. § 5C1.2 consistent with § 3553(f), which went into effect on November 1, 2023. *See* U.S.S.G. Proposed Amend. No. 4 (eff. Nov. 1, 2023).

As in this case, confusion was inevitable given the Sentencing Guidelines' cross-reference to § 3553(f)'s criteria—even where that criteria was not identical. Nonetheless, the only way Mr. Lee (had he properly raised the issue) could qualify for the two-level Guidelines reduction is if § 5C1.2's incorrect reference to "the criteria in 18 U.S.C. § 3553(f)(1)–(5) set forth below" is read to incorporate the amended criteria in § 3553(f), including the broadened criteria for criminal history in § 3553(f)(1)—and to supplant the incongruent criteria in § 5C1.2. But that reading is not plain from the language of § 5C1.2, which set out the former criteria explicitly. Nor has Mr. Lee pointed us to any authority to the contrary.

2006).  The defendant bears the burden of proving eligibility for safety-valve relief.  *See id.* at 1345.

As amended in 2018 by the First Step Act, § 3553(f) provides that a sentencing court shall disregard the statutory minimum mandatory sentence if the defendant does "not have (A) more than 4 criminal history points, excluding any criminal history points resulting from a 1-point offense . . .; (B) a prior 3-point offense . . . ; and (C) a prior 2-point violent offense" and no later than the time of sentencing, have "truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan."  18 U.S.C. § 3553(f); First Step Act of 2018, Pub. L. No. 115-391, § 402(a)(1)(A)(ii), 132 Stat. 5194, 5221 (amending § 3553(f)(1)).  In *Garcon*, we held that the "and" in § 3553(f)(1) is conjunctive and that a defendant remains eligible for safety-valve relief unless he has more than four criminal history points (excluding any criminal history points resulting from a one-point offense), a prior three-point offense, *and* a prior two-point violent offense.  *Garcon*, 54 F.4th at 1277–80.

Although § 3553(f) permits a district court to disregard a statutory mandatory minimum sentence and instead impose a sentence within the advisory guidelines range, there is no mandatory minimum sentence at issue here. Thus, it is unclear why § 3553(f)—or our holding in *Garcon*, which is premised on that statute—is relevant here. Mr. Lee having failed to indicate its relevance

to the contrary, we agree with the district court that statutory safety-valve relief is not applicable.

### III

Mr. Lee next asserts that he was entitled to a minor role reduction pursuant to U.S.S.G. § 3B1.2. Under this provision, a defendant who is a "minor participant" in a criminal scheme can receive a two-level reduction in his or her offense level. A "minor participant" is someone "who is less culpable than most other participants in the criminal activity, but whose role could not be described as minimal." *Id.*, cmt. (n.5).

Whether a defendant is a minor participant is a finding of fact that we review for clear error; thus, we will reverse only if we have "a definite and firm conviction that a mistake has been committed." *United States v. Cruickshank*, 837 F.3d 1182, 1192 (11th Cir. 2016). The district court has "considerable discretion in making this fact-intensive determination," and the defendant bears the burden of establishing his qualification for a reduction by a preponderance of the evidence. *United States v. Boyd*, 291 F.3d 1274, 1277–78 (11th Cir. 2002).

In determining whether a defendant qualifies for the reduction, the district court should consider the following non-exhaustive factors: (1) the defendant's degree of understanding of the structure and scope of the criminal activity; (2) the defendant's degree of participation in the organization and planning of the criminal activity; (3) the defendant's degree of decision-making authority or influence over the decision-making authority; (4) the

defendant's nature and extent of participation in the criminal activity, including his actions and his responsibility and discretion in performing those actions; and (5) how much the defendant "stood to benefit" from the activity. *See United States v. Presendieu*, 880 F.3d 1228, 1249–50 (11th Cir. 2018); U.S.S.G. § 3B1.2, cmt. (n.3(C)). And a district court's analysis should be informed by (1) the defendant's role in the relevant conduct for which he has been held accountable for at sentencing, and (2) his role as compared to that of the other participants in the relevant conduct. *See United States v. De Varon*, 175 F.3d 930, 939 (11th Cir. 1999) (en banc).

As to the first prong, "only if the defendant can establish that he played a relatively minor role in the conduct for which he has already been held accountable—not a minor role in any larger criminal conspiracy—should the district court grant a downward adjustment for minor role in the offense." *Id.* at 944. And as to the second prong, "the district court should look at other participants only to the extent that they (1) are identifiable or discernable from the evidence, and (2) were involved in the relevant conduct attributed to the defendant." *United States v. Moran*, 778 F.3d 942, 980 (11th Cir. 2015) (citing *De Varon*, 175 F.3d at 944). "The conduct of the participants in any larger criminal conspiracy is irrelevant." *De Varon*, 175 F.3d at 944. Indeed, "[e]ven if a defendant played a lesser role than the other participants, that fact does not entitle [him] to a role reduction since it is possible that none [of the participants] are minor or minimal participants." *United States v. Martin*, 803 F.3d 581, 591 (11th Cir. 2015) (internal quotation marks omitted). Thus, "in order to satisfy the second prong, the defendant must show that

he was less culpable than most other participants in his relevant conduct." *Moran*, 778 F.3d at 980.

Mr. Lee asserts that he was nothing more than "a run of the mill street level drug salesman." Appellant's Br. at 24 (citing *Cruickshank*, 837 F.3d at 1192). To support that assertion, Mr. Lee posits that he was "not in charge of anyone in the conspiracy, had no managerial [or] leadership role, [and] merely assisted the conspiracy in a limited manner at the direction of others." *Id*. He further maintains that—unlike some of his codefendants—he was not caught with a firearm and did not live in or maintain the residences where the drugs were found. *Id*.

The district court did not clearly err in finding that Mr. Lee did not warrant a minor role reduction. As the district court made clear at sentencing, Mr. Lee was held accountable only for his conduct by calculating the drugs actually attributed to his sales during his shifts at the drug house. The district court also properly compared Mr. Lee's conduct to that of his co-conspirators, including other similarly situated members of the conspiracy, and agreed with the probation officer's assessment that Mr. Lee's role—specifically in terms of the weight of drugs attributed to him and the length of time of his involvement—was commensurate with that of an average participant in the scheme. *See De Varon*, 175 F.3d at 940–41. Mr. Lee's lack of decision-making authority within the conspiracy did not require the district court to grant him a minor role reduction, and a criminal conspiracy may exist without any

minor or minimal participants, as the district court found here. *See Cruickshank*, 837 F.3d at 1195; *Martin*, 803 F.3d at 591.

## IV

Mr. Lee also asserts that his sentence was both procedurally and substantively unreasonable. We do not agree.

We use a two-step process to review the reasonableness of a sentence imposed by a district court. *See United States v. Cubero*, 754 F.3d 888, 892 (11th Cir. 2014). First, we determine whether the sentence is procedurally sound. *See id.* Assuming it is, we then examine whether the sentence is substantively reasonable given the totality of the circumstances and the sentencing factors set out in 18 U.S.C. § 3553(a). *See id.* At both steps of the process, the party challenging the sentence bears the burden of showing it is unreasonable under the deferential abuse of discretion standard. *See United States v. Early*, 686 F.3d 1219, 1221 (11th Cir. 2012) (citing *Gall v. United States*, 552 U.S. 38, 41 (2007)).

## A

A sentence is procedurally unreasonable if the district court commits a "significant procedural error" such as failing to calculate or incorrectly calculating the guidelines range, treating the guidelines as mandatory, failing to consider the § 3553(a) factors, failing to adequately explain the chosen sentence, or selecting a sentence based on clearly erroneous facts. *See United States v. Pugh*, 515 F.3d 1179, 1190 (11th Cir. 2008); *United States v. Trailer*, 827 F.3d 933, 936 (11th Cir. 2016).

Mr. Lee contends that the district court failed to follow the requirements of *United States v. Booker*, 543 U.S. 220, 262 (2005). Mr. Lee appears to rely on his arguments regarding the application of the safety valve and minor role reductions in support of his procedural unreasonableness assertion. To the extent he does, we reject those arguments once more.

To the extent Mr. Lee argues that the district court violated any of *Booker*'s other mandates, such as by failing to adequately explain the chosen sentence or treating the guidelines range as mandatory, we likewise reject those contentions. There is no indication in the record that the district court treated the guidelines as mandatory. Indeed, the record reflects just the opposite: the district court expressly agreed with Mr. Lee's counsel that the guideline range may have been too high and granted a significant downward variance based on Mr. Lee's individual circumstances.

In short, the district court's sentence was procedurally sound.

**B**

Mr. Lee also asserts that his sentence was substantively unreasonable because the district court gave undue weight to his offense conduct and to his past criminal history.[3] As the party

---

[3] Mr. Lee consistently asserts that the district court inappropriately designated him as a recidivist offender or career offender. *See* Appellant's Br. at 31–32. That is not reflected in the sentencing hearing transcript or elsewhere in the record. Rather, the district court properly reviewed Mr. Lee's criminal history as determined under the Sentencing Guidelines.

challenging his sentence, Mr. Lee has "the burden of showing that the sentence is unreasonable in light of the entire record, the § 3553(a) factors, and the substantial deference afforded [to] sentencing courts." *United States v. Bruno*, 789 F.3d 1249, 1256 (11th Cir. 2015). We have "underscored" that we must give "due deference" to the district court to consider and weigh the proper sentencing factors. *See United States v. Shabazz*, 887 F.3d 1204, 1224 (11th Cir. 2018) (quotation marks omitted).

A district court must impose a sentence that is "sufficient, but not greater than necessary" to comply with the purposes listed in § 3553(a)(2). When fashioning a reasonable sentence, a district court must consider the factors set for in § 3553(a), which include, in relevant part, the "nature and circumstances of the offense and the history and characteristics of the defendant." *United States v. Irey*, 612 F.3d 1160, 1198 (11th Cir. 2010) (en banc). A district court abuses its discretion when it "(1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *Id.* at 1189 (quotation marks omitted).

One indicator of a reasonable sentence is that it is well below the statutory maximum for the crime. *See United States v. Dougherty*, 754 F.3d 1353, 1364 (11th Cir. 2014). A district court has wide discretion to decide whether the § 3553(a) factors justify a variance and the degree of the variance. *Irey*, 612 F.3d at 1196. Though appellate courts may presume a sentence within the guideline range

is reasonable, a sentencing judge must still properly analyze the § 3553(a) factors and set forth enough to demonstrate that he or she has considered the parties' arguments and has a reasoned basis for exercising his or her decision-making authority. *See Rita v. United States*, 551 U.S. 338, 347–50, 356–57 (2007).

Mr. Lee's 40-month sentence is substantively reasonable. The district court appropriately weighed and considered the § 3553(a) factors, including his personal history and characteristics, his difficult upbringing, and his relative culpability as compared to other co-conspirators. The district court appropriately weighed those factors against the serious nature of the crime and Mr. Lee's "low-level but persistent misconduct" as reflected in his criminal history. On balance, the district court varied significantly downward and imposed a sentence well below the guideline range. We find no abuse of discretion in doing so.

## V

Finally, Mr. Lee—for the first time on appeal—contends that his 40-month term of imprisonment, a sentence well below the Guidelines range, constitutes a violation of Mr. Lee's Eighth Amendment right against cruel and unusual punishment. Specifically, Mr. Lee contends that his sentence was disproportionate to his crime.

We generally review de novo the legality of a sentence under the Eighth Amendment; but, when a defendant fails to object in the district court that his sentence violates the Eighth Amendment, we review the claim for plain error. *See United States v. Raad*, 406 F.3d

1322, 1323 (11th Cir. 2005). Plain error requires a defendant to show: (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) that seriously affects the fairness, integrity, or public reputation of the judicial proceedings. *Id*. Generally, "[a]n error is not plain unless it is contrary to explicit statutory provisions or to on-point precedent in this Court or the Supreme Court." *United States v. Hoffman*, 710 F.3d 1228, 1232 (11th Cir. 2013) (internal citation and quotation marks omitted).

The Eighth Amendment contains a narrow proportionality principle that applies to noncapital sentences. *See United States v. Johnson*, 451 F.3d 1239, 1242 (11th Cir. 2006). "Outside the context of capital punishment, there are few successful challenges to the proportionality of sentences." *Id*. This is so because we accord substantial deference to Congress's broad authority to determine the types and limits of punishments for crimes. *Id*. at 1242–43. Consequently, a court "must make a threshold determination that the sentence imposed is grossly disproportionate to the offense committed." *Id*. at 1243 (quotation marks omitted). "In general, a sentence within the limits imposed by statute is neither excessive nor cruel and unusual under the Eighth Amendment." *Id*. (quotation marks omitted).

Here, Mr. Lee has failed to establish any error, much less plain error. Nor has he established how his sentence—more than 47 months below the low end of his guideline range—is grossly disproportionate to his crime under the Eighth Amendment. *See United States v. Flanders*, 752 F.3d 1317, 1343 (11th Cir. 2014). Mr. Lee

23-10551                Opinion of the Court                17

has not pointed to a single Eleventh Circuit or Supreme Court case to the contrary.

**VI**

We affirm Mr. Lee's sentence.

**AFFIRMED.**